**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ECOMPUTER INC. d/b/a GOEXCEED,<br><br>                    Plaintiff,<br><br>        v.<br><br>MOBILE X GLOBAL, INC. and<br>SKYCREST VENTURES, LLC,<br><br>                    Defendants. | **Case No. 1:22-cv-06911**<br><br>**JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT**

Plaintiff, eComputer Inc. doing business as GoExceed ("GoExceed" or "Plaintiff"), by and through its undersigned counsel, for its Verified Complaint against Defendants, Mobile X Global, Inc. ("MXG") and Skycrest Ventures, LLC ("Skycrest") (collectively, "Defendants"), alleges as follows:

**NATURE AND STATUTORY BASIS OF ACTION**

1.      This is a civil action for federal trademark infringement and unfair competition in violation of sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), respectively, for Illinois common law trademark infringement, for unfair competition and deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, and for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 of non-infringement of a federally registered trademark and/or a common law trademark and non-liability for unfair competition, false designation of origin, dilution, or unlawful and deceptive acts and practices under federal or state law.

**PARTIES**

2.      Plaintiff is an Illinois corporation with its principal place of business at 655 W. Grand Avenue, Suite 170, Elmhurst, Illinois 60126. Plaintiff is a well-established provider of mobile

wireless voice and data expense management solutions marketed throughout the United States and in Canada under the trademarks "Mobil-X" and "Mobil(X)" (generally, Plaintiff's "wireless expense solutions").

3.      MXG is a Delaware corporation with its principal place of business at 12 Sail Vista, Newport Coast, California 92657. On November 1, 2022, MXG announced the launch of its "commercial beta program" for mobile wireless voice and data service ("wireless service") under the name "MobileX." (https://www.facebook.com/MobileX.fb (November 1, 2022 post).)

4.      Skycrest is a California limited liability company with its principal place of business at 12 Sail Vista, Newport Coast, California 92657.

5.      Skycrest has admitted that it is affiliated with MXG. In a complaint filed in a since-dismissed action in the Southern District of New York, Skycrest described Defendants' planned future launch of their MobileX wireless service, stating, "[T]ogether with operating companies affiliated with [Skycrest], [Skycrest] has adopted and is using the name and mark MOBILE X in connection with a [sic] mobile telecommunications services . . . which will operate around the world." (ECF No. 1, Compl., *Skycrest Ventures LLC v. Wilson Nweke, et al.*, Case No. 21-cv-6273 (S.D.N.Y.) (the "New York Action").)

6.      In the New York Action, Skycrest further confirmed that "the MOBILE X brand is being developed by Peter Adderton, the founder of Boost Mobile, and the principal of [Skycrest]." (*Id.*)

7.      In addition to being the principal of Skycrest, Mr. Adderton is the chief executive officer, and a director, of MXG.

8.      Thus, as of November 1, 2022, Defendants are now providing and marketing their mobile wireless service to consumers under the name "MobileX": with respect to MXG, as confirmed by, among other things as discussed more fully in the paragraphs below, the launch on that date of

the commercial beta version of the MobileX wireless service and the highly-interactive website at

http://mymobilex.com; and with respect to Skycrest, as confirmed by its "adopt[ion] and us[e] [of]

the name and mark MOBILE X" "together with operating companies affiliated with" Skycrest,

including MXG, as well as by "the MOBILE X brand['s] develop[ment] by Peter Adderton, . . . the

[sole] principal of" Skycrest and chief executive officer of MXG. (*See* quotations and citations in ¶¶

5-6.)

### PLAINTIFF'S TRADEMARKS AND ITS USE OF THE SAME

9.      Plaintiff owns and has standing to sue for infringement of United States Patent and

Trademark Office ("USPTO") Trademark Reg. No. 6,214,462 for the service mark MOBIL-X ("the

Mobil-X Mark"). A copy of Plaintiff's registration for the Mobil-X Mark is attached as Exhibit A

hereto ("the Mobil-X Registration").

10.      The Mobil-X Mark covers, among other goods and services, "[d]ownloadable network

enabled software applications featuring technology that allows users to analyze mobile device usage,

manage device features, allocate mobile device resources and connected [*sic*, connect] to existing and

emerging application programming interfaces (APIs)." (*Id.*)

11.      On November 7, 2019, Plaintiff filed its application to register the Mobil-X Mark with

the USPTO. In that filing, Plaintiff identified June 30, 2014 as the date the Mobil-X Mark was first

used in commerce.

12.      Plaintiff has continuously used the Mobil-X Mark to market and promote its wireless

expense solutions to consumers of wireless services ("wireless customers") since mid-2014. (*Id.*)

Indeed, as shown below, a 2014 company flyer prominently featured the Mobil-X Mark, and offered

Plaintiff's "Cellular Solutions," urged wireless customers to "Gain 100% Control Over Your Mobile

Costs," gain "Direct access to real-time data" concerning text, voice, and data usage, and to "Never

pay overages again" by using Plaintiff's "Cost Mitigation Solution" and "Cost Savings Solution."



13.    As shown below, since the launch of its wireless expense solutions in 2014, Plaintiff

has used Facebook posts featuring the Mobil-X Mark to inform wireless customers about Plaintiff's

service and its potential to save customers money on wireless services.



(GoExceed Facebook post, 7/23/2014.)



(GoExceed Facebook post, 12/21/2018.)

14.     In addition to Plaintiff's pervasive use of the Mobil-X Mark on its marketing and promotional materials, Plaintiff has also used the Mobil-X Mark on other business materials it sends to customers, such as invoices. As shown below, even on its invoices, Plaintiff touts the cost-saving benefits of Plaintiff's Mobil-X solutions.



(GoExceed Invoice 4/7/2020 (callout added) (confidential business information redacted).)

15.      In addition to its registered Mobil-X Mark, Plaintiff owns and has standing to sue for the infringement of the trademark MOBIL(X) ("the Mobil(X) Mark") (collectively, the Mobil-X Mark and the Mobil(X) Mark are "the Mobile-X and Mobil(X) Marks" or "the GoExceed Marks").

16.      As it has done with its Mobil-X Mark, Plaintiff has continuously and pervasively used the Mobil(X) Mark to market and promote Plaintiff's wireless expense solutions. In this regard, Plaintiff has used the Mobil(X) Mark online, in its digital advertising, in social media profiles and posts, in hardcopy and digital documents and slide decks, and in other marketing and promotional

materials in substantially the same form in which the mark appears on Plaintiff's Internet home page as shown below:



([https://goexceed.com](https://goexceed.com).)

17.     Plaintiff has also used the Mobil(X) Mark to market, promote, and demonstrate its wireless expense solutions at industry tradeshows and other events, such as the Channel Partners Conference & Expo ("CPCE"). The CPCE is attended by thousands of people and features more than 350 sponsors and exhibitors, including several wireless service carriers and resellers. Plaintiff's booth at the November 2021 CPCE, held in Las Vegas, Nevada, is pictured below.



18.     Hundreds of businesses have subscribed to, used, and benefited from the cost-saving features of Plaintiff's wireless expense management solutions. Collectively, Plaintiff's customers own and manage hundreds of thousands of mobile devices.

19.     By virtue of Plaintiff's extensive marketing and promotional efforts described in the paragraphs above, Plaintiff's customers have come to recognize an inextricable link between the Mobil-X and Mobil(X) Marks and Plaintiff.

20.     All of Plaintiff's customers (i) are consumers of mobile wireless services and (ii) use Plaintiff's Mobile-X software to streamline, optimize, and provide for cost savings with respect to the use of mobile wireless services. In sum, Plaintiff's Mobil-X solutions exist to help consumers of mobile wireless services spend less on – and therefore save money with respect to – wireless services.

### DEFENDANTS' INFRINGEMENT OF PLAINTIFF'S TRADEMARKS

21.     Defendants have had extensive contacts with Illinois and this judicial district, and have caused specific harm to Plaintiff within this judicial district, by virtue of Defendants' infringement of Plaintiff's trademarks as described more fully below and elsewhere in this Complaint.

22.     As generally discussed in numbered paragraph 3 above, on November 1, 2022, Defendants launched the commercial beta version of their wireless service under the name "MobileX."

23.     As part of and since the November 1, 2022 launch of their wireless service, Defendants have used extensively the "MobileX" name, and confusingly similar variations thereof, such as, by way of example and not limitation, "Mobile X," in marketing, promoting, and providing to beta test subscribers Defendants' wireless service (including Defendants' MobileX App as that term is defined in numbered paragraph 27 below) and products facilitating the provision of Defendants' wireless service such as the MobileX SIM cards described below (*see, e.g.,* ¶¶ 29-33 *infra*) ("MobileX" and confusingly similar variations thereof, collectively, "the Infringing MobileX Marks"). Defendants'

8

aforementioned uses of the Infringing MobileX Marks are hereinafter referred to as the "Infringing Uses."

24.     Also as part of and since the November 1, 2022 launch of their wireless service, Defendants have operated (and continue to operate) a highly-interactive website, http://mymobilex.com/, that provides links for customers nationwide (including in Illinois) to download an application to sign up for the commercial beta version of Defendants' wireless service ("the MobileX website").

> **To begin, just download the app:**
>
> App Store/Default     Google Play/Black & White

*November 2, 2022 Capture of mymobilex.com Website*
*https://web.archive.org/web/20221102010515/http://mymobilex.com/*

25.     Defendants' interactive website displays numerous references to the Infringing MobileX Marks and otherwise refers to "Mobile X Global" and "Mobile X Global, Inc." (http://mymobilex.com.)

26.     Also in connection with their prominently-featured use of the Infringing MobileX Marks, Defendants describe the demand for their commercial beta program as "cray cray" – i.e., *crazy* – and "through the roof."


https://www.facebook.com/MobileX.fb


http://mymobilex.com/

9

27.    From Defendants' MobileX website, customers nationwide (including in Illinois) can download and install the MobileX application using the Apple App Store or the Google Play Store ("the MobileX App").



https://play.google.com/apps/testing/com.mobilexus.app

28.    Defendants' MobileX App, which also prominently features the Infringing MobileX Marks, instructs customers nationwide (including in Illinois) to enter personal information to sign up for the commercial beta program.




29.    Defendants' MobileX App accepts payment and facilitates the order and shipment of required SIM cards to customers nationwide (including in Illinois) through purchases made by customers within the application.



30.    Defendants have specifically shipped SIM cards bearing the Infringing MobileX Marks to Illinois residents located within this judicial district.





31.     Notably, Defendants maintain a critical business relationship with an Illinois distributor based in this judicial district, Vertex Wireless, LLC ("Vertex Wireless"), located at 500 Wegner Drive, West Chicago, Illinois 60185. Vertex Wireless distributes *from its facility in this judicial district* SIM cards bearing Defendants' Infringing MobileX Marks and facilitates the provision of Defendants' wireless service sold under the Infringing MobileX Marks. Without the MobileX SIM cards, users would not be able to activate Defendants' commercial beta program or purchase mobile data from Defendants.

32.     Vertex Wireless – which, again, already resides in this judicial district – has shipped the MobileX SIM cards bearing Defendants' Infringing MobileX Marks to Illinois as well as other states (such as Indiana), as shown in the images below.



*Defendants' SIM Card Shipment to Illinois Zip Code 60010*



*Defendants' SIM Card Shipment to Indiana Zip Code 46368*

33.    With the SIM cards they provide, Defendants sell data, text, and voice communication services to users nationwide (including in Illinois) through their interactive MobileX App. All of the foregoing are branded with and sold under Defendants' Infringing MobileX Marks.



34.    Like Plaintiff's Mobil-X wireless expense management solution, Defendants' MobileX App clearly provides consumers of wireless service automated cost-saving and cost-management functionality and benefits. As Defendants' boast on their MobileX website, the MobilX App – "a simple mobile app" – does each of the following, with overt emphasis on cost-savings:

- "[T]ags along with you to learn about your mobile data usage"

- "Intelligently forecast[s] how much [data] you'll need in the future"

- "[C]alculates the most competitive price for just that amount"

- Allows users to avoid "out-of-control billing surprises" and "manage [their] costs in advance"

- Allows users to "[o]nly pay for what [they] need"

- "Review . . . data in real time [to] match usage to [the user's] preferred spend"

- "[C]ontinues to learn as [the user's] usage level evolves [and] always recommend[s] just the right amount of data [the user] needs" and

13

- Provides a "Data Optimizer mode [that] let[s] [a user] control things like video quality."

35. Thus, Defendants' existing and prospective customers (i) are and will be consumers of mobile wireless services and (ii) use and will use Defendants' MobileX software – namely, the MobileX App – to streamline, optimize, and provide for cost savings with respect to the use of mobile wireless services. In this important regard, and like Plaintiff's Mobil-X software solution described in numbered paragraph 20 above, Defendants' MobileX App exists to help consumers of mobile wireless services spend less on – and therefore save money with respect to – wireless services.

36. For the foregoing reasons, there is clear overlap between the wireless service consumers to whom Plaintiffs and Defendants provide their respective wireless expense management solutions. The parties' goals are the very same – to use automated software solutions to provide savings for consumers of wireless services. Further, Plaintiff has long planned to extend its cost-saving solution offering to individuals, placing such offering and similar offers within the current scope of Plaintiff's Mobil-X and Mobil(X) Marks as part of Plaintiff's "zone of natural expansion."

37. Further confirmation that Plaintiff and Defendants offer their respective wireless expense management solutions in the same channel of commerce lies in the fact that Plaintiff uses the Mobil-X and Mobil(X) Marks to market and promote its wireless expense solutions to business consumers of all sizes, including small businesses. With such small businesses, the consumer is frequently indistinguishable between the business and the individual. For this reason, too, Plaintiff and Defendants inevitably have marketed and promoted, and will continue to market and promote, their respective wireless expense solutions to the same consumers.

38. Further, consumers of wireless services frequently use their mobile devices for both personal and business use. For this independent reason as well Plaintiff and Defendants inevitably

have marketed and promoted, and will continue to market and promote, their respective wireless expense solutions to the same consumers.

## DEFENDANTS' ALLEGED TRADEMARK RIGHTS

39.     On November 21, 2019, Skycrest filed an intent-to-use application with the U.S. Patent and Trademark Office, pursuant to Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), to register "Mobile X The People's Network" as its trademark ("the Skycrest Mark"). (U.S. Trademark Application Serial No. 88701710.)

40.     "Intent to use means that [a trademark applicant] ha[s]n't started using [its] trademark in commerce, but [has] a bona fide intent to do so within the next three to four years." (https://www.uspto.gov/trademarks/basics/application-filing-basis.)

41.     Further, "[a]lthough [a trademark applicant] can apply to register [its] trademark with an intent-to-use basis[,]" as Skycrest did on November 21, 2019, the applicant "cannot actually register [its] trademark until [the applicant] shows that [it has] started using it in commerce and . . . file[s] the proper TEAS [i.e., Trademark Electronic Application System] form." (*Id.*)

42.     As of this filing, on December 8, 2022, the USPTO's Trademark Electronic Search System ("TESS") confirms that both the "Original Filing Basis" and the "*Current* Filing Basis" of Skycrest's application for the Skycrest Mark remains "1(b)" (*see* U.S. Trademark Application Serial No. 88701710), the intent-to-use basis (https://www.uspto.gov/trademarks/apply/basis#1).

43.     Also as of this filing, December 8, 2022, TESS confirms that the Skycrest Mark has not been registered on the Principal Register of trademarks maintained by the USPTO.

44.     On November 8, 2022, the USPTO published the Skycrest Mark for opposition. (https://tsdr.uspto.gov/documentviewer?caseId=sn88701710&docId=PB320221108020929#docIndex=0&page=1.) "Publication begins a 30-day period during which any member of the public who thinks they'll be harmed by the registration of [an applicant's] trademark may oppose it. They may

file a Notice of Opposition, which starts a legal proceeding with the Trademark Trial and Appeal Board (TTAB) about your trademark." (https://www.uspto.gov/trademarks/basics/approval-publication.)

45.     As discussed elsewhere herein, Plaintiff will be harmed by the registration of the later-filed and much-later-used-in-commerce Skycrest Mark, as well as by Defendants' use in commerce of that mark, or confusingly similar variations thereof, including, by way of example but not limitation, the names "Mobile X" or "MobileX," to market, promote, and provide to the consuming public Defendants' wireless service. Accordingly, Plaintiff intends to initiate an opposition proceeding in the TTAB as generally described in numbered paragraph 26 above.

46.     The current intent-to-use status of the application for the Skycrest Mark is consistent with Defendants' just-recent, November 1, 2022 launch of their wireless service as generally described in numbered paragraphs 3 and 8 above.

47.     Irrespective of the status of the application for the Skycrest Mark, Defendants did not use the Skycrest Mark, any variation thereof, or the names "Mobile X" or "MobileX" in any respect in commerce before June 30, 2014, the date on which Plaintiff first used its now-registered Mobil-X Mark in commerce.

48.     Nor did Defendants use the Skycrest Mark, any variation thereof, or the names "Mobile X" or "MobileX" in any respect in commerce as of or before the November 7, 2019 filing date of Plaintiff's application for its now-registered Mobil-X Mark.

**PLAINTIFF'S INITIAL GOOD FAITH EFFORT TO DISSUADE
DEFENDANTS FROM USING THE INFRINGING MOBILEX MARKS**

49.     Prior to Defendants' November 1, 2022 launch of their MobileX service, Plaintiff contacted Defendants and advised them that Defendants' planned use of the Infringing MobileX

Marks was likely to cause confusion and, therefore, would constitute infringement of Plaintiff's Mobil-X and Mobil(X) Marks.

50.     In response to Plaintiff's letter, Defendants (through counsel) engaged in a good faith dialogue with Plaintiff, and the parties explored options to resolve their differences amicably. Despite the parties' initial good faith efforts in this regard, on September 18, 2022, Defendants' counsel terminated the settlement discussions, characterizing Plaintiff's earlier proposal as a "non-starter" and proposing "the possibility of a coexistence agreement" (Defs.' 9/18/2022 email to Pl.) – an alternative that was unacceptable to Plaintiff given the substantial time, energy, and resources it had (by then) devoted to establishing industry recognition and substantial goodwill in its Mobil-X and Mobil(X) Marks.

51.     Six weeks after Defendants terminated the settlement negotiations with Plaintiff, Defendants launched their commercial beta program for wireless service under the Infringing MobileX Marks, as discussed extensively in the paragraphs above, leaving Plaintiff no choice but to file this lawsuit.

52.     Relatedly, in the course of the parties' correspondence, Defendants' counsel advised counsel for Plaintiff of Defendants' alleged ownership of USPTO Trademark Reg. No. 4,121,828 for the service mark MOBILEX, which mark covers "[r]etail [s]tore, [m]ail order store services and online store services featuring a wide variety of retail goods related to telephones, wireless and mobile handheld devices, electronic devices used for mobile telecommunications, and related services and accessories" (the "Retail Mark"). Specifically, Defendants' counsel notified Plaintiff's counsel that, "If GoExceed insists on escalating this matter, MXG [defined by defense counsel to mean Mobile X Global, Inc. and Skycrest Ventures, LLC] will not hesitate to assert its [alleged] senior trademark rights against GoExceed."

53.     Although Plaintiff does not infringe the Retail Mark, based on Defendants' statements set forth above, Plaintiff has a reasonable apprehension of suit. Therefore, a substantial, immediate, and real controversy exists between Plaintiff and Defendants regarding Plaintiff's non-infringement of the Retail Mark.

54.     To the extent Defendants now argue that the Retail Mark extends to the common channel of commerce in which Plaintiff and Defendants operate with their respective wireless expense management software solutions as described in the paragraphs above, such argument would be directly contrary to Skycrest's arguments and allegations in the New York Action. By way of example but not limitation, Skycrest argued the following in the New York Action: the previous owner of the Retail Mark never used that mark in connection with "telecommunications or broadband services," "mobile telephone plans," or "Telecommunication Services." (ECF No. 1, New York Action.)

## JURISDICTION AND VENUE

55.     This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, 2201, and 2202. In addition, the Court has supplemental jurisdiction over Plaintiff's state law and common law claim pursuant to 28 U.S.C. § 1367(a) because it is substantially related to Plaintiff's federal claims and arises out of the same case or controversy.

56.     This Court has specific (and possibly general) personal jurisdiction over Defendants. As set forth in detail above, Defendants transact business in this district at least by offering to provide, providing, and advertising services and products that bear the Infringing MobileX Marks in such a way as to purposefully reach out to customers in Illinois and this judicial district through at least Defendants' highly-interactive website, http://mymobilex.com, Defendants' MobileX App, as well as through Defendants' distributor located in this judicial district, Vertex Wireless, which distributes in Illinois and nationwide SIM cards bearing Defendants' Infringing MobileX Marks and facilitating the provision of Defendants' wireless service sold under such marks. Defendants, therefore, have

specifically committed acts of infringement in this judicial district, have purposefully availed themselves of the privilege of conducting business with residents of this judicial district, and have established sufficient minimum contacts with the State of Illinois such that they should reasonably and fairly anticipate being brought into court in Illinois. Accordingly, the exercise of jurisdiction over Defendants comports with the traditional notions of fair play and substantial justice.

57.     Venue is proper in this district under 28 U.S.C. § 1391(b)-(d).

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**

58.     Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

59.     This Court has jurisdiction over the subject matter of this claim for federal trademark infringement arising under section 32 of the Lanham Act, codified in 15 U.S.C. § 1114.

60.     Defendants' unauthorized use in commerce of Plaintiff's Mobil-X Mark, or confusingly similar variations thereof, by way of sale of services or products or online advertising and promotional efforts using the Infringing MobileX Marks, as described in the paragraphs above, is likely to result in confusion, deception, or mistake and therefore constitute infringement of Plaintiff's registered trademark, MOBIL-X, pursuant to 15 U.S.C. § 1114.

61.     Defendants have used, and/or are continuing to use, Plaintiff's Mobil-X Mark, or confusingly similar variations thereof, with full knowledge of Plaintiff's prior and extensive rights in its Mobil-X Mark, and with an intent and purpose to trade upon the goodwill of such mark. Defendants' infringement is thus willful and deliberate.

62.     Plaintiff has suffered actual damages as a result of Defendants' aforesaid acts. In addition, Defendants' acts have caused, and will continue to cause, great and irreparable injury to Plaintiff, and unless such acts are restrained by this Court, Defendants will continue such acts, thereby

causing Plaintiff to continue to suffer substantial and irreparable harm for which it has no adequate remedy at law.

63.     Defendants have been unjustly enriched by their acts of trademark infringement.

64.     Defendants' infringement has been knowing, intentional, and willful, entitling Plaintiff to increased damages, statutory damages, prejudgment interest, attorney fees, and costs.

### COUNT II
### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

65.     Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

66.     This Court has jurisdiction over the subject matter of this claim for unfair competition and false designation of origin arising under section 43(a) of the Lanham Act, codified in 15 U.S.C. § 1125(a).

67.     Before launching the commercial beta program for their wireless service on November 1, 2022, Defendants were fully aware of the success and popularity of Plaintiff and its wireless expense solutions and the clear association of the Mobil-X and Mobil(X) Marks with such solutions. Notwithstanding, Defendants intentionally offered in interstate commerce Infringing Uses (as defined in the paragraphs above) that are likely to cause confusion, mistake, and deception as to the origin, affiliation, sponsorship, endorsement, or approval of Defendants' services, and to impair the distinctiveness of Plaintiff's Mobil-X and Mobil(X) Marks. As a result, the public is likely to be confused.

68.     Defendants have used in commerce, and continue to use in commerce, Infringing Uses to unfairly benefit from Plaintiff's success by selling similar services in the same channel of trade under the same or confusingly similar terms associated with the Mobil-X and Mobil(X) Marks in this jurisdiction and throughout the United States.

20

69.     Defendants could have and should have selected an alternative name for their Infringing Uses before launching their wireless service on November 1, 2022.

70.     Defendants used and continue to use confusingly similar variations of the Mobil-X and Mobil(X) Marks in providing their Infringing Uses with the intent to cause confusion and mislead the purchasing public into believing that Defendants' Infringing Uses are, and/or Defendants are, authorized, sponsored, affiliated with, or associated with Plaintiff, and to trade upon Plaintiff's reputation for high-quality services and to improperly appropriate to themselves Plaintiff's valuable goodwill and trademark rights.

71.     Sales of the Infringing Uses by Defendants are likely to cause consumer confusion; consumers will believe that Defendants' Infringing Uses are either provided, licensed, or sponsored by, or affiliated with, Plaintiff, or are being placed on the market with Plaintiff's consent and/or actual or implied authority. As a result, Plaintiff has been and will continue to be irreparably injured by Defendants' improper acts.

72.     Defendants have willfully and deliberately created such confusion by copying and reproducing the distinctive aspects of the Mobil-X and Mobil(X) Marks associated with Plaintiff's services; and have advertised and sold, and threaten to advertise and sell, their services and goods so as to cause public confusion and deception. Further, Defendants' sale and offer for sale of their services have caused and threaten to cause Plaintiff the loss of its valuable goodwill and reputation for advertising, providing, and selling distinctive, unique, and high-quality services under the Mobil-X and Mobil(X) Marks.

73.     Defendants' aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Defendants' services as those of Plaintiff in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

74.     Plaintiff has suffered actual damages as a result of Defendants' aforesaid acts. In addition, Defendants' acts have caused, and will continue to cause, great and irreparable injury to Plaintiff, and unless such acts are restrained by this Court, Defendants will continue such acts, thereby causing Plaintiff to continue to suffer substantial and irreparable harm for which it has no adequate remedy at law.

75.     Defendants have been unjustly enriched by their aforesaid acts.

76.     Defendants' aforesaid acts have been knowing, intentional, and willful, entitling Plaintiff to increased damages, statutory damages, prejudgment interest, attorney fees, and costs.

### COUNT III
### STATE STATUTORY AND COMMON LAW TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DECEPTIVE TRADE PRACTICES

77.     Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

78.     This claim arises under the pertinent statutes and common law of this State relating to trademark infringement, unfair competition, and deceptive trade practices. This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition and deceptive trade practices joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

79.     Defendants' wrongful conduct as described in the paragraphs above constitutes unfair methods of competition and unfair and deceptive acts or practices in trade or commerce and creates a likelihood of confusion, misunderstanding, or deception in the public's mind as to the origin of the parties' services, all in violation of 815 ILCS 505/1 *et seq*., 815 ILCS 510/1 *et seq*., and the common law of Illinois.  Defendants have also been and are engaged in deceptive trade practices within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*. Defendants'

22

intentional and knowing conduct, as described above, has been committed willfully for the purposes of application of the aforementioned Illinois statutes.

80.     Plaintiff is the owner of all right, title, and interest in and to the Mobil-X Mark and the Mobil(X) Mark as well as related trade names, designs, symbols, and logos used by Plaintiff by virtue of its extensive marketing, promotion, and sale of wireless expense solutions provided under such trade names, trademarks, designs, symbols, and logos (collectively, Plaintiff's "common law trademarks"), as set forth in the preceding paragraphs of this Complaint. In particular, because of its extensive sales and publicity, Plaintiff has acquired common law trademark rights in and to the names "Mobil-X" and "Mobil(X)" and confusingly similar variations thereof for its services.

81.     The Infringing Uses advertised, offered for sale, marketed, and/or sold by Defendants incorporate matter constituting replicas and imitations of Plaintiff's common law trademarks. Such unauthorized use by Defendants of Plaintiff's common law trademarks constitutes trademark infringement, unfair competition, and deceptive trade practices, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the services, and to cause purchasers or potential purchasers to believe that such services are associated with Plaintiff when, in fact, they are not.

82.     Defendants have willfully and intentionally misappropriated Plaintiff's common law trademarks with the intent of causing confusion, mistake, and deception as to the source of their services and products. Accordingly, Defendants have committed trademark infringement, unfair competition, and deceptive trade practices under the common law and Illinois statutes cited in numbered paragraph 79 above.

83.     By such actions in infringing Plaintiff's common law trademarks, Defendants are improperly trading upon the reputation and goodwill of Plaintiff and impairing Plaintiff's valuable rights in and to such trademarks.

84. Plaintiff has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to cause, irreparable damage to Plaintiff's rights in and to its trademarks, and to Plaintiff's business, reputation, and goodwill.

## COUNT IV
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

85. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

86. An actual and justiciable controversy exists between Plaintiff and Defendants concerning the applicability of Defendants' Retail Mark to Plaintiff's wireless expense solutions and the common channel of commerce in which Plaintiff markets, promotes, and provides those solutions and Defendants market, promote, and provide their wireless service and wireless cost management solution, and, specifically, to Plaintiff's use of its Mobil-X and Mobil(X) Marks in connection with its wireless expense solutions.

87. Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that its use of the Mobil-X and Mobil(X) Marks does not create a likelihood of confusion among the relevant public with Defendants' Retail Mark and that Plaintiff's use of the Mobil-X and Mobil(X) Marks does not constitute trademark infringement, unfair competition, false designation of origin, dilution, or unlawful and deceptive acts and practices under federal or state law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. That judgment be entered in favor of Plaintiff and against Defendants on each claim made in the Complaint;

B.    That the Court order that Defendants, their officers, agents, directors, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participation with Defendants, be immediately and permanently enjoined from:

1.  infringing the Mobil-X and/or Mobil(X) Marks as described above in any manner including generally, but not limited to, advertising, marketing, selling, and/or offering for sale products and services that infringe either such mark, and confusingly similar variations thereof, including, without limitation, Defendants' Infringing Uses as described above, or any similar variations thereof;

2.  using the Mobil-X and Mobil(X) Marks or marks confusingly similar thereto;

3.  using the names MobileX, Mobile-X, Mobile X, or any similar variations thereof, or the website domain http://mymobilex.com;

4.  engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, potential purchasers, Defendants' customers, and/or members of the public to believe that, the actions of Defendants, the services offered by Defendants, the products offered by Defendants, or Defendants themselves are connected with Plaintiff, are sponsored, approved, or licensed by Plaintiff, or are in some way affiliated with Plaintiff;

5.  otherwise competing unfairly with Plaintiff in any manner; and/or

6.  eroding the distinctiveness of the Mobil-X Mark and/or the Mobil(X) Mark, and damaging Plaintiff's goodwill, reputation, and business;

C.    That Plaintiff be awarded damages in an amount sufficient to compensate it for the injuries it has sustained by reason of Defendants' unlawful acts, including Plaintiff's loss of goodwill, loss of past and/or future sales, and damages caused by Defendants' acts of trademark infringement,

unfair competition, false designation of origin, and Illinois State statutory and common law trademark infringement, unfair competition, and deceptive trade practices.

D.      That Plaintiff be awarded increased damages based upon the intentional and willful nature of Defendants' conduct of the kind complained of herein. That Plaintiff be awarded all gains, profits, and advantages received by Defendants from the sale of their Infringing Uses and any other products and/or services that infringe upon Plaintiff's trademark rights;

E.      That Plaintiff be awarded Defendants' profits and all additional remedies provided for in 15 U.S.C. § 1117;

F.      That Defendant be ordered to deliver up for destruction all advertisements, circulars, brochures, and any other items in its possession, custody, or control bearing the names MobileX, Mobile-X, or Mobile X, or the website domain name http://mymobilex.com; or any other similar designations;

G.      That the Court further enter an Order and Judgment against Defendants;

H.      That the Court enter a declaratory judgment that Plaintiff's use of the Mobil-X and Mobil(X) Marks does not create a likelihood of confusion among the relevant public with Defendants' Retail Mark and that Plaintiff's use of the Mobil-X and Mobil(X) Marks does not constitute trademark infringement, unfair competition, false designation of origin, dilution, or unlawful and deceptive acts and practices under federal or state law; and

I.      That the Court provide Plaintiff with such other and further relief as it deems just and proper, or that Plaintiff may be entitled to under the law, including but not limited to attorney fees, costs, and interest.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues presented in this Complaint.

Respectfully submitted,

Dated: December 8, 2022

*/s/ Matthew G. McAndrews*
Matthew G. McAndrews
Kyle D. Wallenberg
NIRO McANDREWS, LLP
21660 West Field Parkway, Suite 118
Deer Park, Illinois 60010
312-755-8577
MMcAndrews@niro-mcandrews.com
KWallenberg@niro-mcandrews.com

*Attorneys for Plaintiff,*
eComputer Inc. d/b/a GoExceed

27

DocuSign Envelope ID: 20806BDD-AD2A-40D5-AF9F-3ECA5E5E45E6

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Bob Chvatal, Chief Executive Officer of eComputer Inc. doing business as GoExceed, verify and declare under penalty of perjury that I have read the foregoing Verified Complaint, and that, to the best of my knowledge and based on information reasonably available to me through the ordinary course of business, the factual matters stated therein are true.

Executed this 8th day of December, 2022.

DocuSigned by:

*Robert Chvatal*

696D7A59A64A41E...

Bob Chvatal